[L. A. No. 7243. In Bank.—December 18, 1923.]

MABEL FRANZEN, Appellant, v. A. M. SHENK, Respondent.

[1] MALICIOUS PROSECUTION—FILING OF INSANITY CHARGE—PROBABLE CAUSE—ISSUES—PROVINCE OF JURY.—In an action for damages for malicious prosecution of an insanity charge against plaintiff, although the question of probable cause is a question of law, the belief of the defendant in a state of facts is a fact which it is proper to submit to the jury for its consideration; and whenever the good faith of the defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause, the court should submit the question to the jury, as well as the other facts which, in its opinion, bear upon that issue.

[2] ID.—UNDISPUTED FACTS—PROVINCE OF COURT.—In such an action, if there is no dispute concerning the existence of the facts relied upon to show probable cause, the trial court must then determine as a matter of law whether such undisputed facts do or do not warrant an inference of probable cause; but when the evidence bearing upon the question of probable cause is in conflict in any essential particular it is the province of the jury to determine whether or not facts exist which will warrant or reject an inference of probable cause.

[3] ID.—GOOD FAITH—BELIEF.—In malicious prosecution cases, good faith is an element of probable cause, and an actual and honest belief in the truth of the charge made against plaintiff is an integral part of good faith; and where that belief is in issue, it is a question of fact for the jury to determine.

[4] ID.—PROBABLE CAUSE—BURDEN OF PROOF—DEFENSE.—In an action for damages for malicious prosecution of an insanity charge against plaintiff, it is incumbent upon plaintiff to assume the

---

1. Action for malicious prosecution for instituting lunacy proceedings, note, 5 A. L. R. 1097.

burden of showing affirmatively the negative fact of want of probable cause in defendant at the time he caused her arrest; and at the conclusion of plaintiff's case, it is then the privilege of defendant to interpose the affirmative defense of probable cause, if he deems it necessary to do so.

[5] ID. — EVIDENCE — STATEMENTS TO ATTORNEY — ABSENCE OF PRIVILEGE.—In such an action, it is not error to admit in evidence over plaintiff's objection the testimony of an attorney concerning what plaintiff said to him, where whatever was said by plaintiff to the attorney in question was said with the express understanding that it was to be communicated to defendant, and where it does not appear that plaintiff went to said attorney seeking his advice in his capacity as an attorney.

[6] ID.—BELIEF OF INSANITY—EVIDENCE—INFERENCE—DUTY OF COURT. In such an action, if there is no evidence whatever from which the jury might infer that the defendant did not in fact believe that the plaintiff was insane, the question of his belief should be determined by the court on the basis of what, under the circumstances, was sufficient to cause a reasonable man to entertain a suspicion of the insanity of plaintiff. (Opinion of supreme court on denial of rehearing.)

[7] ID.—PROBABLE CAUSE—WHEN A QUESTION OF FACT FOR JURY.— In such an action, while the question of probable cause is always a question of law for the court and is to be determined by the standard of the ordinary man, if there is affirmative evidence of the actual belief of the defendant sufficient to justify a conclusion that he did not in fact suspect plaintiff of being guilty of the crime with which she was charged, then the question of probable cause to that extent involves a question of fact to be submitted to the jury. (Opinion of supreme court on denial of rehearing.)

[8] ID. — GOOD FAITH — BELIEF IN GUILT — ELEMENTS OF PROBABLE CAUSE.—In such an action, good faith and an actual and honest belief in the guilt of the party charged with crime is not always an integral and an independent element of probable cause. (Opinion of supreme court on denial of rehearing.)

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

5. Admissibility in evidence of communications to attorney, note, 67 L. R. A. 923.

7. Probable cause as question for court or jury, notes, 26 Am. St. Rep. 141; L. R. A. 1915D, 1.

J. W. Hocker and C. B. Conlin for Appellant.

Ault & Anderson and K. A. Miller for Respondent.

LENNON, J.—This case came here on rehearing after decision by the district court of appeal, second district, first division, the opinion being written in the first instance by Mr. Presiding Justice Conrey. After much consideration of the principal point presented in support of the appeal, we are constrained to hold that the reasoning and the conclusion of Mr. Presiding Justice Conrey clearly and correctly states the law of the case, and therefore we shall adopt his opinion as the opinion of this court. It is as follows:

"This is an action to recover damages for the malicious prosecution of a proceeding wherein, by affidavit filed by the defendant before a justice of the peace, the plaintiff was charged with being an insane person. Upon hearing of said charge after plaintiff's arrest, the proceeding was dismissed. At the trial of the present action the court instructed the jury to render its verdict in favor of the defendant. From the judgment upon verdict in accordance with that instruction the plaintiff appeals.

"The motion for a directed verdict was sustained by the court upon the stated grounds that there were sufficient facts uncontroverted to establish that there was probable cause at the time of the filing of the affidavit to warrant any reasonable person in filing an insanity complaint; and that, in filing the affidavit, the defendant was acting upon the advice of counsel after said counsel had been fully informed of all the material facts. Respondent contends that the court was right upon both of these propositions.

"It is admitted that certain business relations had existed between plaintiff and defendant for two or three years prior to November 30, 1920, the date of said affidavit. The plaintiff further claims, and the defendant denies, that there had been illicit relations between them. The defendant is married and has two children. It appears that several months before November, 1920, the defendant canceled a mortgage indebtedness then owing to him by the plaintiff, and gave her nine hundred dollars, without receiving any consideration therefor. Whether this was a gift, as the plaintiff contends, or whether it was, as the defendant con-

tends, a forced contribution of a blackmailing nature, it is not for us to decide. It does appear that in November there existed some kind of very serious trouble between these parties. The defendant testified that on the night of November 29th the plaintiff had demanded money from him and told him that if he did not comply with this demand 'she would get my children and mutilate them so I would never want to look at them again in my life, and she would get my wife.' Being asked if he considered that she was insane at that time, defendant replied: 'She made these repeated threats, and I could not see how a person—I would say she was insane or unbalanced at times.' Being asked if he ever knew her to have any insane delusions, he replied: 'Only her threats to damage my children.' Mr. Ault, who was the defendant's attorney, testified that on the 30th day of November the plaintiff came to his office and appeared to be very much excited and wrought up; that, among other things, she said that on the night before the defendant had thrown her out of his office and beat her up, and that she was going to get even with him; that she was going to disfigure the defendant's children's faces until he could point to them until his dying day and know that Mabel Franzen put it there; that she would moan and cry and walk the floor, cursing the defendant and making these threats. Mr. Ault testified that he then went down to Mr. Shenk's office, where Mr. Shenk made to him a statement of the events of the night before and of numerous other circumstances concerning defendant's relations with the plaintiff; that the witness Ault told the defendant what the plaintiff had said to him, and the threats which she had made. Mr. Bitler, a deputy district attorney, held conversations during the same day, both with Mr. Ault and with the defendant. They both advised the defendant that there was reason to believe the plaintiff insane, and advised him to make the affidavit charging her with being an insane person. The justice of the peace after discussion of the matter with the defendant, gave him the same advice.

"The plaintiff testified that she did not state to the defendant that she would mar or mutilate his children in any way, or do any violence to them, or make in substance any statement of that kind, either to him or to anyone else. She

testified that she never asked the defendant for money, and that what money he gave her he gave voluntarily.

"Without repeating the testimony in further detail enough has been stated to show the nature of the situation existing between the plaintiff and the defendant at that time on the plaintiff's theory of the case and, alternatively, on the defendant's theory of the case. There is manifestly a conflict in the evidence relating to the facts from which the existence or want of probable cause for the prosecution of the insanity proceeding must be determined. If in truth the plaintiff had not said to the defendant that she would disfigure the defendant's children and injure his wife, his testimony that she had made such threats to him would be false, and this would have a tendency to destroy the effect of the evidence of his good faith in making the affidavit charging insanity of the plaintiff. From this it would follow that the testimony of Mr. Ault that the plaintiff had made the stated threats in his office, and that he had repeated them to the defendant (when taken in connection with the other testimony to which we have referred, including the plaintiff's testimony), was not sufficient to justify the court in determining for itself the truth concerning that testimony without submitting the issue to the jury for decision. And if the 'advice of counsel,' or of the justice of the peace, was in part based upon a false statement of fact by the defendant, then the advice so given, and followed by the action taken by him pursuant to that advice, does not constitute a defense to this action.

"In an action for malicious prosecution of a criminal charge the rule concerning the determination of the question of probable cause has been stated as follows: 'While it is not necessary to show that the crime has in fact been committed, it is necessary to show, not only that the defendant had reasonable ground to believe, but that he did in fact believe, that the crime had been committed, and that the plaintiff had committed the crime. Although the question of probable cause, as we have seen above, is a question of law, yet the belief of the defendant in a state of facts is itself a fact which it is proper to submit to the jury for its consideration; and whenever the good faith of the defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause,

the court should submit that question to the jury, as well as the other facts which, in its opinion, bear upon that issue.' (*Ball* v. *Rawles*, 93 Cal. 222, 234 [27 Am. St. Rep. 174, 28 Pac. 937].)

[1] "The principle thus disclosed is equally applicable to an action to recover damages for malicious prosecution of an insanity charge. It may be that in this case the jury would have believed the defendant's testimony, and would have disbelieved the plaintiff's denial that she had threatened to mar or disfigure the faces of the defendant's children, or to injure his wife. And for the purposes of the present question we assume, without deciding, that the making of such threats would have a tendency to justify belief that the person making such threats was of unsound mind. But it was for the jury, and not for the judge, to determine these facts, which upon the evidence were not admitted and were not undisputed. The defendant testified that when he gave money and canceled the mortgage of plaintiff, in May, 1920, he did it 'to get rid of the annoyance and worry.' If that motive, rather than a genuine belief in the plaintiff's insanity, was the sole cause of his action in filing the affidavit and causing her to be arrested on a charge of insanity, then he was not legally justified in so proceeding. We are not intimating any opinion that he was so influenced. Neither are we concerned with the fact that upon her own showing that plaintiff had been sustaining illicit relations with the defendant, or that, according to some of defendant's witnesses, she had been guilty of such relations with other men. These facts, such as they may be, might affect the amount of a just award of damages for her loss of reputation, or on account of the 'humiliation, shame and mortification' suffered by her if she was wronged by the defendant in the matter of this insanity charge. But in any event, she was entitled to have the facts determined by the jury, to which, by law, the issue should have been submitted."

It will be noted that Mr. Presiding Justice Conrey declares the rule in malicious prosecution cases to be that "'although the question of probable cause . . . is a question of law, yet the belief of the defendant in a state of facts is itself a fact which it is proper to submit to the jury for its consideration; and whenever the good faith of the

192 Cal.—37

defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause, the court should submit that question to the jury as well as the other facts which, in its opinion, bear upon that issue.'" This rule emanates from and is supported by the following cases: *Potter* v. *Seale,* 8 Cal. 217; *Harkrader* v. *Moore,* 44 Cal. 144; *Eastin* v. *Stockton Bank,* 66 Cal. 123 [56 Am. Rep. 77, 4 Pac. 1106]; *Fulton* v. *Onesti,* 66 Cal. 575 [6 Pac. 491]; *Dawson* v. *Schloss,* 93 Cal. 194 [29 Pac. 31]; *Ball* v. *Rawles,* 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937]; *Sandell* v. *Sherman,* 107 Cal. 391 [40 Pac. 493]; *Booraem* v. *Potter Hotel Co.,* 154 Cal. 99 [97 Pac. 65]; *Runo* v. *Williams,* 162 Cal. 444 [122 Pac. 1082]; *Fleischhauer* v. *Fabens,* 8 Cal. App. 30 [96 Pac. 17]; *Montz* v. *Nevins,* 40 Cal. App. 202 [180 Pac. 537]; *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *Stein* v. *Lacassie,* 189 Cal. 118 [207 Pac. 886]. **[2]** The rule recited by Mr. Presiding Justice Conrey is, however, subject to the qualification which the foregoing authorities declare and generally agree, in substance and effect, to be that if there is no dispute concerning the existence of the facts relied upon to show probable cause, the trial court must then determine as a matter of law whether such undisputed facts do or do not warrant an inference of probable cause. On the other hand, it is undoubtedly the rule that when the evidence bearing upon the question of probable cause is in conflict in any essential particular it is the province of the jury to determine whether or not facts exist which will warrant or reject an inference of probable cause. In short, to the extent that there is any dispute as to the existence of facts which may constitute the basis of a finding for or against probable cause such dispute must be submitted to the jury for its determination. (Newell on Malicious Prosecution, sec. 9, p. 14.)

**[3]** Good faith is undoubtedly an element of probable cause in malicious prosecution cases, and an actual and honest belief in the guilt of the plaintiff is obviously an integral part of good faith. The actual belief of the defendant in the instant case in the insanity of the plaintiff, based upon all of the facts within his knowledge must, therefore, of necessity have been an element of probable cause. In other words, "the belief of the defendant in the

guilt of the plaintiff, or which is the same thing, in the truth of the charge made against that person in the prosecution complained of, is a material element in probable cause" and where "that belief is in issue, what such belief was is a question of fact for the jury to determine." This is declared to be the rule in a very carefully prepared note to *Simmons* v. *Gardner*, L. R. A. 1915D, 79, which reviews all of the authorities on the subject, including many of those cited and referred to herein.

But even if the proposition that the honest belief of a prosecutor in the guilt of the defendant were not declared by numerous authorities, both ancient and modern, to be an element of probable cause, it would seem to be so upon principle for, as was said in the reasoned and seasoned case of *Broad* v. *Ham,* decided in 1839 and reported in 132 English Reprints, 1278, "It would be a monstrous proposition, that a party who did not believe the guilt of the accused, should be said to have reasonable and probable cause for making the charge." The rule in this behalf is stated in *Fleishhauer* v. *Fabens, supra,* where it is held, in effect, that the good faith of the defendant is an essential element in the defense of probable cause; and that even though a defendant shows reasonable grounds of suspicion, sufficiently strong in themselves as to warrant a cautious man in the belief that there was probable cause for the prosecution, nevertheless if it be apparent that he did not himself believe in the guilt of the accused, then the circumstances upon which he relied will not suffice to shield and vindicate him.

Good faith is an independent element of probable cause which is not limited solely to a defendant's defense that he had probable cause. "The law requires," says Newell, in his work on Malicious Prosecution, page 325, section 11, "that one in instituting a criminal prosecution shall act in good faith, or under an honest belief of the guilt of the party arrested; and this notwithstanding he has taken legal advice." That this declaration of the rule was not intended by the author to be limited solely to the question of good faith as an element of the affirmative defense of "advice of counsel" is manifested by the very language in which the rule stated is embodied which declares the necessity of "honest belief of the guilt of the party arrested," notwith-

standing that the prosecutor may have taken legal advice. This conclusion is fortified by the fact that the caption of the text which deals with the rule declares that there shall be "good faith independent of legal advice." In *Roy* v. *Goings*, 112 Ill. 656, which was cited to support the rule enunciated in Newell, there was involved the correctness of an instruction, which, it was contended "required too much in saying that appellant must have acted in good faith in starting the prosecution, after having obtained the opinion of the state's attorney—that his advice should protect a party commencing such a proceeding, without reference to good faith." The court held the instruction to be correct, saying, in the course of its opinion, "The law in all cases requires good faith, or, rather, a belief that the accused is guilty of the crime charged. The person claiming the accused is guilty, may know or believe he is not, although the attorney may suppose he is." To the same effect is the case of *Vann* v. *McCreary*, 77 Cal. 434 [19 Pac. 826], wherein it was held that the advice of counsel for the commencement of a prosecution is no defense to an action for malicious prosecution if it appears that the defendant did not believe that the accused was guilty. The case last quoted from was cited with approval in the comparatively recent case of *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143], where it was said, in effect, that the defendants therein did not have probable cause for the prosecution there complained of because "knowing, as they did, that no crime had really been committed" they could not have depended upon the advice of counsel. The court then proceeded to hold that "whether or not defendants acted *bona fide* upon counsel's advice is a question for the jury. (*Potter* v. *Seale,* 8 Cal. 217.) Advice of counsel is no defense if the person who pretends that he acted upon it did not believe the accused was guilty." So, therefore, it would seem to be the settled rule that if it appears anywhere during the trial of the case, whether in the *prima facie* case made by the plaintiff or in the course of the presentation of the defendant's affirmative defense of probable cause, that the defendant did not actually believe in the guilt of the person charged with crime, then that fact is an essential element to be considered in the determina-

tion of the question of whether or not the defendant had probable cause.

Conceding that the quotation from Newell was directed to the question of good faith as an element in the affirmative defense of advice of counsel, nevertheless the rule declared therein has application to the situation presented in the case at bar for the reason that, as the record before us shows, the trial of the case had proceeded to a point where the plaintiff and defendant had completed their respective cases upon all the issues, including that of probable cause, raised and expressly tendered by the answer of the defendant, which pleaded as well the "honest belief by the defendant" that the plaintiff was insane.

[4] Incidentally it should be noted that in keeping with the code rule that evidence in support of an issue must be adduced by a party holding the affirmative and that, therefore, the burden of proof rests upon the party who would be denied relief if no evidence were given on either side (Code Civ. Proc., sec. 1981; *Carpenter* v. *Ashley,* 15 Cal. App. 461 [115 Pac. 268]), it was incumbent upon the plaintiff in this case to assume the burden of showing affirmatively the negative fact of want of probable cause in the defendant at the time he caused her arrest. At the conclusion of the plaintiff's case, it was then the privilege of the defendant to interpose the affirmative defense of probable cause, if he deemed it necessary to do so. The instant case had proceeded beyond the point of a nonsuit and presumably, therefore, the plaintiff had made out a *prima facie* case. The defendant was sworn and testified as a witness for the plaintiff in her case in chief and he also took the witness-stand and testified in his own behalf, and in so doing evidently supplied whatever deficiency may have been in the plaintiff's case concerning his belief in the insanity of the plaintiff at the time he instituted the prosecution of her upon the charge of insanity. It will thus be noted that in the case at bar no question arises as to where the burden of proof rests in the first instance, and the only question involved is as to when the issue as to the existence of facts bearing upon the question of probable cause must be submitted to the jury for its determination. Of course, in keeping with the rule above stated, if there had been no evidence whatever from which the jury might have inferred

that the defendant did not in fact believe that the plaintiff was insane, the question of his belief should have been determined by the court on the basis of what, under the circumstances, was sufficient to cause a reasonable man to entertain a suspicion of the insanity of the plaintiff.

There is, however, in the record before us sufficient evidence to have justified the jury in finding, had the question been submitted to it, that the defendant did not in fact believe that the plaintiff was insane when he swore to the affidavit charging her with insanity. Thus there is the denial of the plaintiff, which for the moment must be accepted as true, that she did not threaten to mutilate the defendant's children and his family. This denial created an important conflict in the evidence bearing upon the question of defendant's belief in the insanity of the plaintiff. These threats, so the defendant testified, were the only foundation for his belief that the plaintiff was subject to "insane delusions and hallucinations." In addition there is abundant evidence in the record which tends to impugn the belief of the defendant in the insanity of the plaintiff at the time of the institution of the proceedings which are stated as the basis of the cause of action for malicious prosecution. Thus there is evidence that the plaintiff went to the defendant's office on a certain day at his invitation and that the defendant then and there said to her, "Mabel, dear, you remember that you are in business and have a good thing here. Remember what I am telling you. You had better keep still or I will put you where the bow-wows won't bark at you." Certainly this last bit of evidence is some evidence of the fact that the defendant did not in fact believe in the truth of the charge which he had lodged against the plaintiff. Furthermore, there is the testimony of the defendant that when he gave money and canceled the mortgage of the plaintiff in May, 1920, he did it to get rid of the "annoyance and worry." This testimony, when viewed in the light of the meretricious relations, which, it is claimed by the plaintiff, existed, and which, for the purpose of testing the correctness of the trial court's ruling directing a verdict, must be assumed to have existed, might well have justified the jury in finding that the defendant was actuated by a desire to get rid of the plaintiff and to permanently escape "the annoyance and worry" attendant

upon her continued attentions, rather than by a genuine belief in the plaintiff's insanity. It cannot, we think, be gainsaid that this evidence, while it may, perchance, have been evidence of malice, was also some proof of the fact that defendant did not honestly believe in the insanity of the plaintiff when he preferred the charge against her.

There is nothing in the cases of *Potter* v. *Seale, Dawson* v. *Schloss,* and *Stein* v. *Lacassie, supra,* holding that both malice and want of probable cause must concur and that want of probable cause cannot be inferred from malice, which runs counter to the conclusion expressed herein. We are not holding that want of probable cause may be inferred from malice, but we are holding that the same evidence which tends to prove malice may also, if it indicates a lack of belief on the part of the defendant in the guilt of the plaintiff, tend to prove want of probable cause. The instruction in the case of *Stein* v. *Lacassie, supra,* which upon appeal was held erroneous, declared that in the absence of proof of advice of counsel with a fair and full statement of the facts, that a malicious determination of the defendant constituted lack of probable cause. The instruction was clearly erroneous for it, in effect, declared that in the absence of proof of advice of counsel, want of probable cause *must* be inferred from malice. The criticism made of the instruction was that the defendant may have acted in good faith even though she was acting upon a fixed and malicious determination of her own. This is undoubtedly a just criticism for malice and lack of belief in the guilt of the accused are not one and the same thing. For example, the defendant, honestly believing in the guilt of the plaintiff, may, with a vindictive motive, prosecute the plaintiff. In such a situation, if, in addition to the honest belief of the defendant in the guilt of the plaintiff, there was the added fact of reasonable grounds for the belief, then there would be probable cause, despite the presence of malice. If, on the other hand, in addition to malice, there was a lack of belief by the defendant in the guilt of the plaintiff, there was want of probable cause, despite the existence of facts which would justify the suspicions of a reasonable man in the guilt of the accused.

The opinion of the jury as to the existence of the facts involved in the determination of probable cause may be obtained in either of two alternative ways. One mode is the

use of the special verdict. While this is apparently the less frequent it is in many respects the better practice. The trial court by this method gets the opinion of the jury as to what facts exist without giving any intimation as to what facts must exist to entitle either party to a judgment. From the facts thus obtained the trial court determines the existence or nonexistence of probable cause as a matter of law.

The prevailing practice, however, seems to be for the trial court to submit the question of probable cause to the jury with hypothetical instructions as to what facts in the particular case under consideration do or do not amount to probable cause. That is to say, the jury are instructed that if they find certain enumerated facts to exist, there was probable cause and their verdict must be for the defendant, but if they find certain other enumerated facts to exist there was want of probable cause and their verdict must be for the plaintiff. (*Ball* v. *Rawles,* and other cases *supra.*)

[5] The plaintiff contends that the trial court erred in admitting over her objection the testimony of a Mr. Ault concerning what she said to him. The ground of the objection was that Ault was the attorney for the plaintiff and that whatever she may have said to him was a privileged communication. It is clear that the testimony complained of and objected to does not fall within the category of confidential communications made between attorney and client. This is so because the record shows that whatever was said by the plaintiff to the attorney in question was said with the express understanding that it was to be communicated to the defendant and, moreover, it does not appear that the plaintiff went to the attorney in question seeking his advice in his capacity as an attorney.

The judgment is reversed.

Lawlor, J., Seawell, J., and Kerrigan, J., concurred.

WILBUR, C. J., Dissenting.—I dissent. As the case involves an important question concerning the relative functions of court and jury in cases of malicious prosecution, the grounds of my dissent will be somewhat fully stated, and such statement will involve some repetition of the facts as stated in the main opinion.

The trial court instructed the jury to bring in a verdict in favor of the defendant and the plaintiff appeals from that judgment. The defendant had sworn to an affidavit charging the plaintiff with being insane, that is to say, so far disordered in her mind as to endanger health, person, or property (Pol. Code, sec. 2168). Upon the hearing of the insanity charge the commission came to the conclusion that the plaintiff was not insane and the charge was dismissed by the court.

If the testimony of the defendant is believed, there can be no question about the propriety of the instructed verdict. He testified that the plaintiff, without cause, had threatened to mutilate defendant's daughters; that he had stated all the facts in the matter to his attorney and was advised by his attorney and also by a deputy district attorney, a justice of the peace, and a constable that in their opinion the plaintiff was insane and that he should institute a proceeding for her detention as an insane person. The question of whether or not there is want of probable cause is conceded by the plaintiff to be a question of law to be determined by the court (*Davis* v. *Pacific Telephone Co.,* 127 Cal. 313, 319 [57 Pac. 764, 59 Pac. 698] ; *McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668] ; *Johnson* v. *Southern Pac. Co.,* 157 Cal. 333 [107 Pac. 611], and cases hereinafter referred to). Where, however, the question of whether or not there was a want of probable cause turns upon disputed testimony, it was for the jury to determine the facts. The burden of proving want of probable cause rests upon the plaintiff (*Potter* v. *Seale,* 8 Cal. 217, 221; *Grant* v. *Moore,* 29 Cal. 644; *Levy* v. *Brannon,* 39 Cal. 485; *Anderson* v. *Coleman,* 53 Cal. 188; *Jones* v. *Jones,* 71 Cal. 89 [11 Pac. 817] ; *Lacey* v. *Porter,* 103 Cal. 597 [37 Pac. 635] ; *Davis* v. *Pacific Telephone Co.,* 127 Cal. 313 [57 Pac. 764, 59 Pac. 698] ; *McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668] ; *Lee* v. *Levison,* 173 Cal. 166 [159 Pac. 438] ; *Jirku* v. *Brod,* 42 Cal. App. 796 [184 Pac. 413] ; *Squires* v. *Southern Pac. Co.,* 42 Cal. App. 549 [183 Pac. 695]).

In the case at bar, as the matter was not submitted to the jury, we must assume that they would have resolved all disputed questions of fact in favor of the plaintiff and upon this assumption determine whether or not the instruction to the jury to return a verdict in favor of the defendant was

justified. The most important conflict in the evidence is that between the testimony of the plaintiff and defendant concerning the threats against the defendant's children, to which he testified. The plaintiff denied that she had made such threats to the defendant. The plaintiff testified that she had been maintaining meretricious relations with the defendant for three and a half years; that the defendant during all that time assured her that he loved her and no longer loved his wife and that he wished to get rid of his wife so that he could continue his relations with the plaintiff. The defendant flatly denied such relationship. We must, however, assume the plaintiff's testimony to be true. These assumptions cut two ways. They tend to show malice on the part of the defendant, that is, a desire to get rid of her for reasons wholly personal to himself, on the other hand, these assumed facts tend to show that the plaintiff was in a dangerous frame of mind.

These assumed facts also have another very significant result in this, that they deprive the defendant of the defense based upon the advice of his attorney, of the justice of the peace and of the district attorney, for in each instance he stated to him that the plaintiff had threatened to mutilate his children. Assuming, as we must, that this statement was untrue, he was not entitled to rely implicitly upon their advice to him to institute proceedings and such advice is not a protection to him in instituting that prosecution.

Before stating in greater detail the various undisputed facts and circumstances relied upon by the defendant as constituting probable cause, it is well to state the rule controlling in the determination of whether or not probable cause exists. The test for the determination of the question in the case at bar is whether or not a reasonable man having the information that the defendant had would be justified in entertaining a suspicion that the plaintiff was so far disordered in her mind as to endanger person or property. The conduct of the defendant must be considered in the light of what a reasonable person would be justified in believing or doing, and if a reasonable person having the information which had been brought to the defendant would have been justified in a suspicion that the plaintiff was insane, then his action was justified in law unless the defendant had information or knowledge derived from other sources which

would so far offset the suspicious circumstances and facts brought to his attention as to indicate that a reasonable man having all the information which the defendant possessed would not have entertained the suspicion that the plaintiff was insane (see *Johnson* v. *Southern Pac. Co.*, 157 Cal. 333 [107 Pac. 611] ). The trial judge must place himself in the position of the defendant, knowing what he knew and having the information conveyed to him which was presented to the defendant, and ask the question, Would a reasonable man, knowing what the defendant knew and receiving the information that the defendant received, be justified in entertaining a suspicion that the plaintiff was so far disordered in her mind as to endanger her own person or her own health or her own property or the person or health or property of any other person? This must be the rule if the question of probable cause is one of law for the court and not one of fact for the jury. The standard for comparison must be the reasonable man and not the particular person whose conduct is under investigation if the question is one of law.

### Defendant's Belief.

There are, however, statements in some of the decisions in this and in other states in apparent conflict with this view, to the effect that the knowledge or belief or the good faith of the defendant is involved in the question of probable cause, as well as in the question of malice. (See *Harkrader* v. *Moore*, 44 Cal. 144, 149, 150; *Runo* v. *Williams*, 162 Cal. 444, 451 [122 Pac. 1082].) These statements, however, must be construed in the light of the fundamental proposition acknowledged and enforced by all the decisions, including the very decisions in which these statements occur, that probable cause upon a given state of facts is a question of law to be determined by the court (*Harkrader* v. *Moore, supra,* p. 152), and consequently, it follows, to be determined by the standard of the ordinary man and not by the characteristics or belief of the particular person involved in the controversy. The good faith, the belief and the knowledge of the defendant are questions of fact and as such necessarily questions to be determined by a jury unless established by uncontroverted testimony or admitted by the defendant or his counsel. There may be cases, however, in which the actual knowledge or belief of the defendant is shown by the evi-

dence. For instance, if the defendant admits that notwith-standing the appearance of guilt on the part of the person prosecuted he nevertheless was certain that the appearances were deceptive and that the person was innocent, he would not be justified in inaugurating the prosecution, although a reasonable man without such belief would be so justified. Here, however, we encounter another difficulty, namely, that a person of ordinary prudence is not bound to believe in the guilt of a person before he can act, but is justified in caus-ing his arrest, or in instituting the prosecution if upon reasonable grounds he suspects that the person is guilty. If, therefore, the defendant admits that he had no fixed or definite belief in the guilt of the person prosecuted and was uncertain as to such guilt, but also testifies that he suspected him of the offense, such testimony, if credited, must be suffi-cient to exculpate him if he had reasonable grounds for his suspicion. For illustration, in the case at bar, if the defend-ant had admitted that he did not have a definite belief in the insanity of the plaintiff because he did not know enough about insanity to judge of that matter, but also testified that he suspected her of being insane, it follows that if such suspicion was founded on sufficient facts, he would be clearly acting with probable cause, notwithstanding his admission.

Perhaps no better illustration of the inaccuracy of the statement that the defendant must *believe* in the insanity of the person prosecuted can be presented than is shown in this case, where the defendant was compelled to take some action to protect his children from threatened injury, assum-ing, for purposes of illustration, that his testimony as to plaintiff's threats against his children is true. If she was insane she could not well be prosecuted criminally, and if the defendant suspected her of insanity it was certainly more reasonable to cause her detention as an insane person than to kill or injure her in defending his wife and children from the threatened injury. His suspicion of her insanity would make action on his part the more necessary, for he could not assume, with such a belief or suspicion, that the threats were the result of anger which would speedily pass away.

The rule established by the authorities upon the subject of belief as an element of probable cause would seem to be this: While the question of probable cause is always a ques-

tion of law for the court and is to be determined by the
standard of the ordinary man, yet if there is affirmative
evidence of the *actual belief* of the defendant sufficient to
justify a conclusion that he did not in fact suspect the plain-
tiff of being guilty of the crime with which she was charged,
then the question of probable cause to that extent involves
a question of fact to be submitted to the jury. The au-
thorities are reviewed in a recent note to the case of *Sim-
mons* v. *Gardner*, L. R. A. 1915D, 16, 78, as follows:

''There are some reported cases which appear at first sight
to have somewhat relaxed the application of the rule that it
is a question for the jury whether the facts brought forward
in the evidence be true or not, but that what is reasonable
and probable cause is matter of law, by seeming to leave
more than the mere question of the facts to be proved to
the jury; but upon further examination it is found that,
although there has been an apparent, there has been no real
departure from the rule. Thus, in some cases the reason-
ableness and probability of the ground for prosecution has
depended not merely upon the proof of certain facts, but
upon the question whether other facts, which furnished an
answer to the prosecution, were known to the defendant at
the time it was instituted. Again, in other cases, the ques-
tion has turned upon the inquiry whether the facts stated
to the defendant at the time, and which formed the ground
of the prosecution, were believed by him or not. In other
cases the inquiry has been whether, from the conduct of the
defendant himself, the jury will infer that he was conscious
he had no reasonable or probable cause. But in these and
many other cases which might be suggested it is obvious that
the knowledge, the belief, and the conduct of the defendant
are really so many additional facts for the consideration of
the jury, so that in effect nothing is left to the jury but the
truth of the facts proved and the justice of the inferences to
be drawn from such facts, both which investigations fall
within the legitimate province of the jury whilst at the same
time they have received the law from the judge, that, ac-
cording as they find the facts proved or not proved, and the
inferences warranted or not, there was reasonable and prob-
able ground for the prosecution or the reverse. (*Panton* v.
*Williams*, 2 Q. B. 169, 1 Gale & D. 504, 10 L. J. Exch.

(N. S.) 545; *Hess* v. *Oregon German Baking Co.*, 31 Or. 503, [49 Pac. 803].)

"And in *Ball* v. *Rawles*, 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937], the court said: 'Although the question of probable cause, as we have seen above, is a question of law, yet the belief of the defendant in a state of facts is itself a fact which it is proper to submit to the jury for its consideration; and whenever the good faith of the defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause, the court should submit that question to the jury, as well as the other facts, which in its opinion bear upon that issue.' . . . "

The author of the note also states:

"C. Belief of Defendant.

"That the belief of the defendant in the guilt of the plaintiff, or which is the same thing, in the truth of the charge made against that person in the prosecution complained of, is a material element in probable cause, seems to be clearly recognized, either expressly or impliedly, by all the definitions of that defense.

"And the rule is well established that where that belief is in issue, what such belief was is a question of fact for the determination of the jury. . . . "

The view I have expressed is not exactly in accord with that stated by the author of this note in the last paragraph quoted above, but is in substantial agreement with his conclusion in the first paragraph quoted, that it is only when there is proof upon the question of the actual belief of the defendant that such question is involved, and that when so involved it is a question of fact for the jury.

The rule is so stated in a recent English case in the court of appeal, king's bench division (*Bradshaw* v. *Waterlow & Sons, Ltd.* [1915], L. R. 3 K. B. 527), as follows: " . . . the question of the honest belief of the defendants should not be left to the jury unless there is evidence of the absence of such belief. . . . " The case of *Blachford* v. *Dod*, 2 Barn. & Adol. 179, 186, decided in 1831, is quoted from in support of this rule as follows: "It was not a question of fact for them whether the defendants believed that they had good ground for indicting the plaintiff, but all the material facts being ascertained, it was for the Judge to say whether

the defendants had reasonable or probable cause for so doing. . . . ''

I will presently examine the decisions in this state to show that this rule harmonizes all the decisions, and most of the *dicta* upon that subject, but, before doing so, for greater clarity, I will consider what sort of evidence would raise the question of fact now under consideration. Evidence of actual ill will, of hostility, of malice, would not alone be sufficient to raise the question of fact as to the defendant's belief, for these elements are always involved in and essential to the other branch of a case of malicious prosecution, namely, malice, and if evidence of malice alone, actual or implied, is sufficient to raise the question of fact as to the defendant's actual belief, then the question of probable cause in every case must be submitted to the jury, and such a conclusion is, of course, in conflict with every decision on the subject. (See cases hereinafter cited.)

The authorities go no further than this: That affirmative evidence that the defendant did not in fact believe that the plaintiff was guilty, such as defendant's own testimony or admissions, declarations, or conduct, may require the submission of the question of probable cause to the jury. Let us see if the authorities in this state are in harmony with the rule we have just stated. The rule is in conflict with some of the statements made by the court in the decision of the case of *Ball* v. *Rawles,* 93 Cal. 222, 234 [27 Am. St. Rep. 174, 28 Pac. 937]. It is there said: ''As a principle of law, this instruction was erroneous in omitting to include therein the further element that the defendant did in fact believe that a crime had been committed by the plaintiff. . . . While it is not necessary to show that the crime has in fact been committed, *it is necessary to show,* not only that the defendant had reasonable ground to believe, but that he did in fact believe, that the crime had been committed, and that the plaintiff had committed the crime. Although the question of probable cause, as we have seen above, is a question of law, *yet the belief of the defendant in a state of facts is itself a fact which it is proper to submit to the jury for its consideration;* and whenever the good faith of the defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause, the court should submit that question to the

jury, as well as the other facts which, in its opinion, bear upon that issue.'' (Italics ours.)

There is no doubt that these expressions by the court in that case, taken at face value, declare that unless the defendant in fact believed that the person charged was guilty, there was a want of probable cause, and that *he must show that he so believed*, but, as already seen, the burden of proving want of probable cause is upon the plaintiff. It is equally clear that the question of whether or not the particular individual who instituted the prosecution in fact believed that the crime had been committed is a question of fact, as is stated in the above excerpt from *Ball* v. *Rawles*, and that if the test in every case is the actual belief of the defendant as distinguished from the belief of a 'reasonable man, every case would have to be submitted to the jury upon the question of whether or not there was a want of probable cause. This conclusion, however, is directly in the teeth of the principle decided in *Ball* v. *Rawles, supra,* which was that the question of a want of probable cause was *always* a question for the judge, and not for the jury; that is, a question of law, and not a question of fact. It was declared there that the question should never be submitted to the jury. The discussion which we have quoted from that decision was provoked by the consideration of an instruction set out on page 233 of the opinion, and the discussion is premised with the following: *''Inasmuch as the question of probable cause is always to be determined by the court from the facts in each particular case,* it would seem unnecessary to give to the jury any definition of the term, or any instruction upon abstract propositions relating to this subject. These abstract rules will guide the court in determining the question, but are apt to lead the jury away from their function of passing upon the effect of the evidence in support of the probative facts which the court may direct them to find in order to determine in which way their general verdict should be rendered.'' (Italics ours.)

The instruction under consideration in *Ball* v. *Rawles, supra,* so far as related to the point now under discussion, is as follows: ''If the facts *which come to a person's knowledge* are such as to create a belief that a crime has been committed by the person charged, in the mind of an impartial, reasonable man, this would be sufficient to constitute

probable cause for making an arrest, although no crime had in fact been committed.'' (Italics ours.) The point that the court is there trying to emphasize in pointing out the vice in this instruction is that it ignores the person's own knowledge of the facts as distinguished from ''facts which come to a person's knowledge.'' This is emphasized by a sentence in the paragraph from which we have heretofore quoted and which we omitted in order to emphasize its importance, ''The circumstances in themselves might be such as ordinarily to create such belief in the mind of a person, yet the defendant might not have that belief, *for the reason that he had knowledge of other facts or circumstances* which would destroy such belief.'' (Italics ours.)

The court in *Ball* v. *Rawles, supra,* again and again declared that the question of a want of probable cause is one for the trial judge as a question of law and not one for the jury, and reversed the case because the trial court had submitted that question to the jury under general instructions defining want of probable cause. In discussing that question the court set out an instruction (page 226), given at the request of the plaintiff, to the effect that if the defendant ''did not believe that plaintiff was guilty of any crime, and that he did not have sufficient knowledge, as a cautious and prudent man, acting conscientiously and impartially, to believe the plaintiff guilty of any crime, then, as a matter of law, there was no probable cause for the arrest and prosecution of plaintiff.'' In commenting upon that instruction the court said: ''These were not the only facts of which evidence regarding probable cause had been given to the jury, and the above instructions, given at the request of the defendant, left to the jury the function of determining this question. The court should have told the jury, either that the evidence which was introduced was or was not sufficient to establish a probable cause, or that, as from the evidence they should find the facts which, in the opinion of the court, would or would not be sufficient to show as probable cause, their verdict should be for or against the defendant.''

The effect of the decision in *Ball* v. *Rawles, supra,* is that the question of probable cause is always one for the court, *even though it involves the belief of the defendant,* thus overlooking the fact that the actual belief of the particular

defendant is a question of fact. There was, however, no affirmative proof as to defendant's belief in the evidence. The rule upon the matter of the defendant's belief is thus stated in the later case of *Griswold* v. *Griswold*, 143 Cal. 617, 620 [77 Pac. 672], in which plaintiff sued the defendant for malicious prosecution in the institution of insanity proceedings. It was there said:

"It was incumbent upon plaintiff to prove both want of probable cause and malice. (2 Greenleaf on Evidence, 16th ed., sec. 449.) On the other hand, the defendant had the right to prove that he acted in good faith, without malice, and upon probable cause; that is, upon such facts and information as would induce a reasonably prudent man to believe that the plaintiff was insane. . . . *Probable cause has reference to the common standard of human judgment and conduct, and malice refers to the mind and judgment of the defendant* in the particular act charged as a malicious prosecution. *Malice* need not indicate anger or vindictiveness, but it *imports bad faith in a malicious prosecution, or the want of sincere belief that the facts and circumstances justify the prosecution.* As said by Chief Justice Redfield in *Barron* v. *Mason*, 31 Vt. 197: 'For it is found in almost every book upon the subject, that if defendant, *however causelessly,* did really act in good faith and without malice in preferring the charge, he cannot be made liable for a malicious prosecution.'" (Italics ours.)

The court also said in that case (*Griswold* v. *Griswold, supra*): "And so in case a party is insane and dangerous to be at large. It would not do to hold honest parties in heavy damages for an error of judgment. If so it would be difficult to get responsible parties to make complaints. All that the law requires as a defense to this kind of an action is the existence of such facts and circumstances as would induce the belief *in the mind of a reasonably cautious man* that the party was insane at the time the charge was made. If such facts and circumstances existed, the plaintiff ought not to recover." (Italics ours.)

It was said in *Lee* v. *Levison*, 173 Cal. 166 [159 Pac. 438]: "This court from the earliest history of the state has adopted the definition for 'probable cause' derived from the discussion in Greenleaf's treatise on Evidence: 'Probable cause is a suspicion founded upon circumstances sufficiently

strong to warrant a reasonable man in the belief that the charge is true.' ''

This definition was approved in *Potter* v. *Seale*, 8 Cal. 217, 221, where it was held to be well settled to be a question of law for the court. (*Harkrader* v. *Moore*, 44 Cal. 144.)

The case of *Harkrader* v. *Moore*, *supra*, was an action for malicious prosecution based upon a charge of theft made by the defendant against the plaintiff. Upon the trial of the action for malicious prosecution the defendant "requested an instruction that if the jury should find certain enumerated facts, these would, of themselves, amount to probable cause, and would entitle the defendant to a verdict. These facts were, 'that the defendant had the possession and control of the rails as the agent of the owner, and that plaintiff took said rails and converted them to his own use without the knowledge or consent of the owners or of said defendant, and that plaintiff afterwards denied to defendant that he had taken said rails and endeavored to conceal his act of taking said rails.' (44 Cal. 149.) . . . The instruction as requested, ignoring, as it did, the actual belief of the defendant *at the time he caused the arrest of the plaintiff*, and having no reference to the circumstances, or to the appearances of guilt of the plaintiff, then known to the defendant, and under which he laid the charge against the plaintiff, was properly refused.'' (Id., p. 151.)

The court, in *Harkrader* v. *Moore*, *supra*, also discussed another instruction requested by the defendant and refused, to the effect that if they believed from the evidence ''that at the time of the alleged prosecution, the facts of which the defendant, Moore, then had knowledge, were sufficient to warrant a reasonable man in the belief that the alleged charge was true, the plaintiff cannot recover in this action.'' The court criticised and justified its refusal of this instruction because ''the defendant may not, in fact, have believed the charge to be true; and if he did not so believe, there could, as to him, be no probable cause for setting the prosecution on foot.'' (See, also, discussion on pages 150, 151, Id., *supra*.)

We have quoted the decision thus far somewhat at length because it seems to hold, and it is declared in the syllabus to hold, and is relied upon in the main opinion as holding, that the defendant must, in fact, believe as well as

have reasonable grounds for believing at the time that the accusation was made that the charge was well founded. As has been already stated, the actual belief of a particular defendant as to the guilt or innocence of a person is always a question of fact, and can never be a question of law. The logical conclusion to be deduced from the above quoted and cited portions of the opinion in *Harkrader* v. *Moore* would seem always to require the submission to a jury of the question of probable cause, because an essential element therein is the actual belief of the actual defendant. But that this was not the view of the court which rendered the decision in *Harkrader* v. *Moore, supra,* is clear, for, after criticising the instruction in the manner hereinbefore stated, it is declared that the instruction was erroneous because it submitted to the jury the question of probable cause. The court thereupon proceeded to enunciate the rule that the question of probable cause was a question for the court and not for the jury. Upon that subject the court stated as follows: ''But the proposed instruction is in another respect objectionable. It sought to submit to the jury the question of the existence of probable cause. . . . The authorities are substantially uniform that the question of probable cause, however presented, is a question of law, and, therefore, one to be determined by the Court. When the facts in reference to the alleged probable cause are admitted, or established beyond controversy, then the determination of their legal effect is absolute, and the jury are to be told that there was or was not probable cause, as the case may be. When, however, the facts are controverted, and the evidence is conflicting, then the determination of their legal effect by the Court is necessarily hypothetical, and the jury are to be told that if they find the facts in a designated way, then that such facts, when so found, do or do not amount to probable cause. But in neither case are the jury to determine whether or not the established facts do or do not amount to probable cause.''

We thus have in this case two entirely inconsistent declarations, one that the question of probable cause is always a question of law, and the other that probable cause involves the belief of the defendant in the truth of the charge made by him. The difficulty arises in part from the fact that the instruction under consideration instead of reciting the facts

which, if known to the defendant, would have justified him as a reasonable man in acting in the belief that the charge was true, left them to determine, first, what facts the defendant knew, and, second, whether or not they justified him as a reasonable man in believing the charge to be true. This is pointed out in the decision now under consideration in the following language: "To inquire whether or not such facts as were known to the defendant were sufficient to warrant him as a reasonable man in the belief that the plaintiff was guilty, is to inquire not only what particular facts were known to him, but also, and at the same time, to determine their legal sufficiency as constituting probable cause." The basic questions under consideration in that case, then, were whether or not the defendant at the time he instituted the prosecution of the plaintiff had knowledge of the facts, which were relied upon by him on the trial as a justification for the prosecution, and, if so, whether the jury should be permitted to first determine what the defendant knew about the matter, and, then, whether or not such knowledge so found by them justified him as a reasonable man in believing such facts not stated by the court, but to be found by the jury, to be a true charge. It was held that this could not be done.

This case, then, construed as a whole, in effect, declares that the element of the belief of the defendant in the guilt of the person he was prosecuting, in so far as it entered into the question of probable cause, in that case was a question to be determined by the court. We think this case is not in conflict with the true rule to be as we have heretofore stated in this opinion, that the question of the belief of the defendant should be submitted to the jury only where there is evidence concerning the condition of the mind of the defendant which tends to show that he did not in fact believe in the truth of the charge.

In the case of *Runo* v. *Williams*, 162 Cal. 444 [122 Pac. 1082], the judgment of the trial court in a case of malicious prosecution was reversed "For the error in refusing to permit defendant to testify directly on the subject of his belief, good faith, and motive in making the criminal charge as bearing on the issues of both probable cause and malice . . . "

The questions referred to are as follows: "What was your motive and reason for instituting the criminal prosecution against Mr. Runo?" "Whether in instituting the criminal prosecution you were actuated by malice, hatred or ill feeling or whether you were actuated by an honest belief that he was guilty of the offense that you charged against him?" "When you instituted the criminal prosecution you honestly believed in good faith that he was guilty of the offense as charged against him?"

In discussing and determining the admissibility of this evidence the court said: "It is not sufficient that the facts and circumstances were such as would lead a reasonable and prudent man to believe that the offense charged was committed, but it must also appear that he acted upon them in an honest and reasonable belief that the plaintiff was guilty. Probable cause is, in effect, the concurrence of the belief of guilt with the existence of facts and circumstances reasonably warranting the belief (*Harkrader* v. *Moore*, 44 Cal. 144; *Dawson* v. *Schloss*, 93 Cal. 194 [29 Pac. 31]).

"It is apparent, therefore, that a belief in the guilt of the plaintiff as to the offense charged was one of the relevant and pertinent facts to be shown by the defendant in support of his claim of probable cause in making the accusation.

"Nor can it be claimed that in addition to proof of his honest belief in the guilt of the plaintiff, it is not equally pertinent on the distinct issue of malice for the defendant to show such belief and his reason, motive, and good faith in making the criminal charge."

In determining the effect of this decision it should be noted that the only question passed upon by the court was the admissibility of the testimony of the defendant's belief when offered by himself for the purpose of defeating the plaintiff's case and of showing that there was no malice in the prosecution but that it was based upon an honest belief of the defendant in the plaintiff's guilt.

The supreme court in that decision was not considering the question of the relative functions of the court and jury. It is clear that the answer of the defendant to the questions propounded to him upon the witness-stand would have been relevant upon the question of probable cause or malice and favorable to himself if he testified affirmatively in response to the questions, and, on the other hand, if he should testify

negatively and thus establish that he acted without belief in the guilt of the plaintiff and with malice, the evidence would be equally competent.

So far, then, as the discussion of the court in that case relates to the belief of the defendant as an element in the question of probable cause it must be interpreted in the light of the question under consideration. The court does not attempt to decide how the jury in that case should be instructed upon a new trial, but states upon that subject: "The law is clearly and definitely settled how a jury shall be instructed in the cases of this character," citing in support of that statement the cases of *Grant* v. *Moore,* 29 Cal. 644; *Harkrader* v. *Moore,* 44 Cal. 144; *Eastin* v. *Bank of Stockton,* 66 Cal. 123 [56 Am. Rep. 77, 4 Pac. 1106]; *Fulton* v. *Onesti,* 66 Cal. 575 [6 Pac. 491]; *Ball* v. *Rawles,* 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937]; *Smith* v. *Liverpool Ins. Co.,* 107 Cal. 433 [40 Pac. 540], and *Scrivani* v. *Dondero,* 128 Cal. 31 [60 Pac. 463].

There is another line of cases that should be considered in arriving at a conclusion in this case. The rule as to a want of probable cause for a prosecution in this case is the same rule invoked in cases of false imprisonment where the arrest is made without a warrant. (See 3 Cal. Jur. 120, sec. 65; 12 Cal. Jur. 432, sec. 4; *People* v. *Kilvington,* 104 Cal. 86 [43 Am. St. Rep. 73, 37 Pac. 799]; *People* v. *Melendrez,* 129 Cal. 549 [62 Pac. 109].) In the case of *People* v. *Kilvington, supra,* it was held to be the duty of the trial court to determine the question of probable cause for an arrest in a criminal action for false imprisonment. In that decision there is no suggestion that the actual belief of the defendant was material, but the question for determination as there stated is whether or not he had reasonable grounds to believe that the offense had been committed, or, to quote the language of the decision, "Did the defendant, in view of the facts as presented to him at the time, have reasonable or probable cause to believe that the deceased had committed a felony?" (104 Cal. 92 [43 Am. St. Rep. 73, 37 Pac. 800].) In view of the fact that it was held to be error to submit to the jury the question of probable cause in that case, we quote at length from the decision.

"But the court erred in the manner in which it submitted the question of probable cause to the jury. Upon this point

the court gave the following instruction: 'It is for the jury to determine from all the facts and circumstances of the case whether the defendant had reasonable cause to believe that a felony had been committed by the deceased. If you find from the evidence that he had such cause for belief, you will then determine whether, in the attempt to arrest the deceased, he used only such means as were necessary to prevent the escape of the deceased, and to effect his arrest.'

"This instruction submitted to the jury the entire question in reference to the existence of probable cause upon the part of the defendant to arrest the deceased, and that body was called upon not only to find whether the facts relied upon by the defendant to show such probable cause were true, but also, if true, to determine whether or not they were legally sufficient for that purpose. The instruction was erroneous, as it is not the province of the jury to decide in any case whether the facts and circumstances which they may find established by the evidence are sufficient to constitute probable cause. This principle of law is now settled beyond doubt or controversy, as a reference to a few of many cases which might be cited on that point will show. 'This question of probable cause, or reasonable ground for suspicion, whether it arises in actions for malicious prosecution or false imprisonment, is one of law, unless the evidence out of which it arises is conflicting, in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and submit to them only the question as to such facts.' (*Burns* v. *Erben*, 40 N. Y. 463; *Bulkeley* v. *Keteltas*, 6 N. Y. 384; *Masten* v. *Deyo*, 2 Wend. (N. Y.) 425; *Pangburn* v. *Bull*, 1 Wend. (N. Y.) 345; *Driggs* v. *Burton*, 44 Vt. 124; *Panton* v. *Williams*, 2 Ad. & E. (N. S.) 169; *Sutton* v. *Johnston*, 1 Term Rep. 493, 545.) And our predecessors in passing upon the same question in *Harkrader* v. *Moore*, 44 Cal. 152, said: 'The authorities are substantially uniform that the question of probable cause, however presented, is a question of law, and therefore one to be determined by the court. When the facts in reference to the alleged probable cause are admitted or established beyond controversy, then the determination of their legal effect is absolute, and the jury are to be told that there was or was not probable cause, as the case may be. When, however, the facts are controverted and the evidence is con-

flicting, then the determination of their legal effect by the court is necessarily hypothetical, and the jury are to be told that if they find the facts in a designated way, then that such facts, when so found, do or do not amount to probable cause.' The same rule is also announced in *Grant* v. *Moore*, 29 Cal. 644; *Fulton* v. *Onesti*, 66 Cal. 575 [6 Pac. 491], and in the late case of *Ball* v. *Rawles*, 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937], where the whole question is elaborately discussed.

''As already stated, the facts in this case were undisputed, and the court ought, therefore, to have instructed the jury as to their sufficiency in law to justify the defendant in attempting to arrest the deceased; that is, *whether they were legally sufficient to induce a reasonable belief in the mind of the defendant that the deceased had committed a felony.* The defendant requested the following charges upon this point: . . . Did the defendant, in view of the facts as presented to him at the time, have reasonable or probable cause to believe that the deceased had committed a felony?

''There is a substantial agreement in the decisions of the courts as to what constitutes probable cause or reasonable cause such as will justify one in arresting or prosecuting another upon a criminal charge; and perhaps as clear and comprehensive a statement of the rule as can be found is that of Shaw, C. J., in *Bacon* v. *Towne*, 4 Cush. (Mass.) 217: 'There must be such a state of facts,' said he, 'as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty.' Applying this rule to the facts of this case, we think it must be held that defendant had reasonable cause to believe that the deceased may have committed a felony. . . . '' (Italics ours.)

In the later case of *People* v. *Melendrez, supra,* it was held that the question as to whether or not the defendant in a criminal prosecution for false imprisonment had reasonable ground for belief in the guilt of the person arrested could not be taken from the jury where the court was of the opinion that no such ground existed, but could only be invoked in his favor. The court there referred to *People* v. *Kilvington, supra,* as follows: ''The court simply applied in favor of the defendant the rule established in civil cases for malicious prosecution or false imprisonment; which is,

that to establish probable cause 'there must be such a state of facts *as would lead a man of ordinary care and prudence to believe* or entertain an honest and strong suspicion that the person is guilty.' But this rule has never been applied, as against the defendant in a criminal case, to establish a want of probable cause for a mistaken belief, nor should it be. For in such cases the degree of intelligence evinced by the defendant must always be an important element in determining his guilt. Nor is it reasonable that the same rule should be applied to all of a class, including individuals of all grades of intelligence, from the least to the highest.'' (Italics ours.)

This case holds there that in civil actions the defendant's conduct is to be judged by the standard of an ordinary man to be determined by the court, but in a criminal action while this rule cannot be invoked against him, it can be invoked in his favor. In a recent civil case for false imprisonment the rule is again stated in *Michel* v. *Smith,* 188 Cal. 199 [205 Pac. 113], decided by this court in Bank, all justices concurring. The plaintiff had been arrested by the defendants as a deserter. In that case a judgment had been rendered upon a verdict in favor of the plaintiff. This judgment was reversed by us upon the ground that the defendants were justified as a matter of law in making the arrest. It was there stated: ''The question to be decided, then, is this: Did the defendants, under the circumstances related, *have reasonable ground to believe* that the plaintiff was a deserter? Probable cause may be defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*Potter* v. *Seale,* 8 Cal. 217, 221.) The court must determine, as matter of law, whether the facts and circumstances as they appear, or are found to exist, constitute probable cause. (*McKenna* v. *Heinlen,* 128 Cal. 97, 100 [60 Pac. 668]; *McCarthy* v. *De Armit,* 99 Pa. St. 63.)'' (Italics ours.) In that case the plaintiff testified that at the time of the arrest he told the officers that he had notified the local board of his new post-office address. This statement, if true, showed that the plaintiff was not a deserter. The officers disputed this testimony. It was held by us that the question of probable cause under the circumstances was one for the court to determine as a matter of law. It seems to me that it might

be argued with equal force in that case as in this that the
question of whether or not the particular officers believed
the plaintiff guilty turned upon the question of whether or
not *they believed* the plaintiff's statement to them, in effect,
that he was not a deserter.  This question of their belief
would be a question of fact, but the court held that as
reasonable men they were not required to accept the state-
ment of the party about to be placed under arrest, and de-
termined the case upon a consideration of what, under the
circumstances, a reasonable man was justified in believing
and doing.  If the defendant officers were not only required
to act upon reasonable grounds for a belief, but also upon
an actual belief, the decision in that case was wrong.  If
the rule in *Michel* v. *Smith, supra,* conflicts with the earlier
cases relied upon in the main opinion it should control us
as the latest decision of this court.  If, however, it is con-
sistent with the actual decisions in those cases, as I believe
it is, it certainly should be followed, rather than to follow
the *dicta* in our decisions that the belief of the defendant
is in all civil cases for malicious prosecution an element of
probable cause, and as such must be submitted to the jury.
In my opinion the question of the defendant's actual belief
should be submitted to the jury only where there is evidence
upon the subject of the defendant's actual belief sufficient
to support the conclusion that there the defendant did not
in fact suspect the plaintiff of guilt, although he had reason-
able grounds to do so.

In the case at bar, it seems clear that the defendant was,
under all the circumstances of this case, warranted as a rea-
sonable man in suspecting the plaintiff of being insane.

### Defendant's Knowledge.

We will next consider the question of the defendant's
knowledge as affecting the question of probable cause.  Upon
the question of the *knowledge* of the defendant as dis-
tinguished from *the belief* of the defendant, it is clear that
the burden of proving what the defendant knew is upon
the plaintiff in a case of malicious prosecution, if such
knowledge is relied upon to show a want of probable cause.
Such proof having been made, the question is whether or not,
with the knowledge and information possessed by the defend-
ant, a reasonable man would be justified in instituting the
proceedings; that is, would such a man be acting with prob-

able cause? In the case at bar the defendant alone *knew* of his meretricious relations with the plaintiff. The facts of which they had knowledge persuaded the constable, the district attorney, the justice of the peace and the defendant's own attorney, all reasonable men, no doubt, that the plaintiff was insane, and they told these facts to the defendant and informed him of their belief, nevertheless, as he alone *knew* of his meretricious relations with the plaintiff, the question for the consideration of the court is not "did the defendant in fact believe that the plaintiff was or was not insane," but "would a reasonable man knowing all the facts which were known to the defendant by reason of having them brought to his attention by others and also knowing in addition the facts which he alone knew, namely, that such meretricious relations existed, have reason to suspect as a reasonable man that the plaintiff was insane?"

### Good Faith.

The question of *good faith* is always involved in a case of malicious prosecution, as an element in the question of malice, and when it is shown that the defendant in fact disbelieved the appearances of guilt, it is also an element in the question of probable cause, as heretofore stated.

### Public Policy.

The rule that probable cause is a question for the court is based upon consideration of public policy requiring that criminals be prosecuted without the hazard of claim for damages for malicious prosecution where the prosecutor acts upon reasonable grounds. This rule was stated by this court in a case of malicious prosecution growing out of a charge of insanity (*Griswold* v. *Griswold, supra,* hereinbefore quoted; see, also, note to 1915D, L. R. A. (N. S.), p. 89).

The cases all hold that where the facts are disputed, the question of probable cause is one for the jury to determine upon proper instructions, but this rule, of course, does not apply where, upon the undisputed facts, and a view of the disputed facts most favorable to the plaintiff, the court can say as a matter of law upon such facts that there was probable cause, and in such case a nonsuit or instructed verdict is proper. We are called upon in this case to determine whether upon the most favorable view of evidence, and of the inference to be drawn therefrom to sustain plaintiff's case, it appears that there was probable cause, and in de-

termining that question we will leave the discussion as to the evidence of defendant's belief until the last.

We must thus assume in this case that the defendant testified falsely when he testified that the plaintiff made threats to him to disfigure his children; that he misrepresented the facts when he made a similar statement to his attorney, and that he was influenced by malice in his proceeding against the plaintiff, yet the question still remains as to whether or not a person of ordinary intelligence, that is, a reasonable man, was justified in believing or suspecting from the facts which were known to the defendant and the information given to him that the plaintiff was sufficiently deranged in her mind to be dangerous to herself or others (see *Stein* v. *Lacassie*, 189 Cal. 118 [207 Pac. 886]).

In this connection the undisputed evidence tending to create such a suspicion in the mind of a reasonable man may be stated as follows: The plaintiff at the time was under arrest upon a charge of threatening breach of the peace by reason of having made threats to kill a man named Erskine because Erskine had attached her automobile. This charge arose out of the fact when the constable attempted to make the attachment the plaintiff informed him that she intended to kill the attaching creditor and rushed into her apartment and secured a revolver with which she threatened to commit the murder, but the revolver was taken from her by the constable.

The justice of the peace, after conferring with the deputy district attorney, agreed with the latter that there was no doubt that an insanity charge should be made against the plaintiff and he so informed the defendant. The justice of the peace testified concerning this interview with the deputy district attorney, Mr. Bitler, as follows:

"He had seen her there at the courthouse that day and had observed her actions very closely and he asked me if I had and I said 'yes' at various times and particularly that day. He said in his opinion that there was no doubt but what a warrant should be issued or affidavit should be filed and a citation into court for an examination should be issued. Q. On the insanity charge? A. Yes, sir; on an insanity charge. Q. What did you say to him? A. I told him from what had occurred that day, I agreed with him."
With reference to the defendant, this witness testified:

"Q. Did you not tell him what your views were and advice was? A. Yes, sir. . . . Q. And that was the same you had given Mr. Bitler? A. Just the same." This witness also testified that before he had seen the defendant he had formed the opinion that the plaintiff was insane. "Q. She accused Shenk of being the instigator of the bondsman going off? A. Yes, sir; she said it was his work. Q. And, now, did you ever have any dealings with insane people? A. Quite a number of cases have come up down here; yes, sir. Q. What would you say, you considered the defendant here insane, didn't you, on that afternoon of that day? A. Yes; I thought she was at that time."

When asked to give the reason for believing she was insane he testified as follows: "Q. Tell the jury what you saw her do, the exact things you saw her do and the exact words you heard her say that led you to believe she was insane. A. Well, after she was taken over to the city jail, I passed over that way and at some distance, I heard her there singing and hollering and making a disturbance over there, but I could not repeat the exact words she used because I didn't pay enough attention to them. Q. Do you know whether or not it was her that was hollering there? A. Yes, sir; I knew her voice. . . . Q. So you decided she was insane, did you? A. I don't know that I came to any decision at that time. Yes, sir; I thought to myself she must be off. Q. She must be off; was she off or insane? A. Mentally unbalanced. Q. And what did you consider—you gave it quite a little consideration? A. Naturally at the time; yes. She was in court at that time. Q. What did you consider was the cause of this insanity? A. I don't know. Q. Trouble with Mr. Shenk? A. I didn't know what was the cause of it, I didn't attempt to learn at that time any cause. I didn't know enough to know what the trouble was that she was having with Shenk."

The witness in giving his reason for discharging her on the charge of threats to kill: "I found that in my opinion there was no danger of her killing Dad Erskine and of carrying out her threat to kill." He further testified: "My recollection of it [the evidence] is that she said she didn't mean what she said when she said 'I will kill him.' She was just excited and hysterical, and picked up the revolver and said 'If that old devil don't quit hounding me, I will

kill him,' or something to that effect. But she didn't
mean it.''

· It thus appears that the justice of the peace concluded
from his observation of the plaintiff's conduct, and without
reference to the threats defendant claims plaintiff made to
him and without knowledge of their illicit relations, that the
plaintiff was insane. This information was communicated to
the defendant. The plaintiff denies that she so conducted
herself, but as the justice of the peace so reported to the
defendant, the defendant's conduct must be judged by the
information given him and not by the fact, if it be a fact,
that plaintiff did not create such a disturbance.

The witness Ault, an attorney who represented the defend-
ant on the trial of this action, testified as follows with re-
lation to the conduct of the plaintiff: ''Q. Now, Mr. Ault,
start in and state in detail, what you observed from the time
of the filing of the—from the time you observed the plaintiff
and the wind-up of your conversation with Mr. Shenk.
A. I cannot give the exact date of this. It was either the
29th or 30th, or along in there, but it was in the morning
of the day that the insanity charge was filed, the complaint.
In my office, over the White Cross Drug Store, I was in my
private room and the door opened. Miss Franzen came into
my room. The moment she came in, she slammed the door
after her, and I noticed she had been crying. Her hair was
disheveled; she was very much excited and very much
wrought up. She said to me, 'I am going to kill Dolph, the
son-of-a . . . ,' and I said, 'Who do you mean?' She said,
'I mean Dolph Shenk,' I said, 'Why, now listen, Mabel, I
want you to understand I am Mr. Shenk's attorney, and I
am his friend, and any statements of that sort you make to
me, I am going to convey them back to Mr. Shenk.' She
says, 'I don't care if you tell him. I want you to tell him,
because I am going to publish it in the newspapers. I will
publish it to the whole world. I am going to take it up with
his wife.' I said, 'With that understanding, go ahead and
tell your story.' I told her to sit down and she wouldn't.
She kept walking back and forth in my office, wringing her
hands. She would cry awhile, and I said to her, 'What do
you mean by all this, Mabel?' She said that, I don't re-
member what terms she used then, but she says, 'He threw
me out of the office last night, and beat me up, and I am going

to get even with him.' I said, 'Why don't you get even with *him*, then?' She says, 'I am not going to take that means of getting even with him; I have another.' I said, 'What is that?' She says, 'I am going to disfigure his children's faces until he can point to them until his dying day and know that Mabel Franzen put it there.' I said, 'Mabel, do you realize what you are saying?' and she says, 'I certainly do.' I said, 'Do you know you are making threats against innocent children that have nothing to do with their father's relations, conceding that you and Dolph Shenk were intimate, and that all you say is true, and that he did kick you out of the office, why pick on his children?' I said, 'Mabel, one of two things is wrong with you; you are either crazy or you are a fool, to make such a statement as that.' She says, 'It doesn't make any difference. That is what I am going to do, and when I get through with these children, I will finish up Mrs. Shenk.' I said, 'Mabel, there is another thing. Why should you make a threat against Mrs. Shenk, conceding this is all true, she isn't to blame for his actions.' She says, 'It doesn't make any difference, she is trying to come between us. Dolph has lived with me and supported me and he has brought me presents and taken me riding, and now he is trying to throw me down.' I said, 'Suppose all of that is true, you wouldn't carry out your threats against his children.' She says, 'I certainly would.' She kept walking up and down in my office, and walking into my library-room, and I have a big Morris chair sitting by the desk. She reclined in it. It is a reclining chair, and she would lean over the arm of the chair while she would moan and cry and then she would get up and start to walk the floor again, cursing him and making these threats, and I would repeatedly ask her not to do that, and try to show her where it was foolish to do such a thing. She must have stayed in my office an hour, all the time making these same threats that she was going to mutilate his children, and then get Mrs. Shenk, and she would break up his relations with Mr. Vosburg. She says, 'Dolph Shenk knows damn well I will do it because I have already carried out other threats.' She went back into my library again and sat down in the chair, and had a spell of crying. All the time of her abuse of him I was considerably worried about her. She was wringing her hands and twisting her

handkerchief, and I sat there and must have talked to her fifteen minutes. She finally consented that she would not do anything; that she loved him so much that she would forget this, and that she would not harm a hair of his head. Immediately upon her leaving the place, I went down to Mr. Shenk's office. I don't know whether it was immediately, but it was very shortly afterward. . . . I believe Mabel made this statement in my office before I went down there, that Shenk thinks he is smart. He is going to try and get his wife out of town, but they are leaving to-night on the train, and I will be Johnny-on-the-spot, and I will do what I have threatened to do. I tried to argue her and discourage her about doing a thing like that, and then when I went down there I told him this, and I think that was when I advised it, or we discussed the advisability of putting an officer on her trail.''

Thus, Mr. Ault, defendant's attorney, after an hour's interview with the plaintiff reported to the defendant that he had had this interview and, in effect, that after hearing her statement concerning the alleged illicit relations between the plaintiff and defendant and the defendant's denial of such relations, he advised the defendant that in his opinion the woman was dangerous and was insane, advised him to secure a guard to protect his wife and children. The plaintiff denies making these threats to Mr. Ault, but the defendant's conduct is to be judged by the information he had, namely, that the plaintiff had threatened to kill him, disfigure his children, and wreak revenge upon his wife, and that her conduct and conversation had caused Mr. Ault to conclude that the plaintiff was insane.

It is unnecessary to recite other testimony on the subject because it is clear from what has been said that the defendant as a reasonable man did not act without probable cause in filing the insanity complaint, even when we consider his own knowledge as well as the information and advice given him, unless he in fact did not entertain a *bona fide* suspicion of her insanity. Upon that subject the defendant testified that as early as May, 1920, the plaintiff secured money from him by threats of making him trouble by ''telling his wife'' and his principal, Mr. Vosberg, and that from these unwarranted threats he thought she was insane or unbalanced at times, and here it should be said that defendant paid the

plaintiff nine hundred dollars cash, and a mortgage of two thousand three hundred dollars, in pursuance of such threats. Defendant testified he knew of no insane delusions on her part except "her threats to damage my children," on November 29, 1920, the day before defendant swore to the complaint charging the plaintiff with being insane. The defendant also testified as to his belief as follows: "A. He [Mr. Ault] told me that she was going to tell the party that I had had relations with her, and she was going, by reason of that statement, she was going to make me come through, and break up my family and my financial standing. Q. Did she state in what particular way she was going to, how she was going to arrive at that point? A. Yes, sir. Q. State what else you remember, if anything. A. He said she would—he *said I would have to come through and if I didn't* she would get my children and mar them for life so I would never want to look at them again, and also get the wife, as he put it. Q. Did you believe from what you had seen, and what had been told you, that your children and family were in danger? A. I most certainly did, sir. Q. Was that belief present when you signed that affidavit? A. Positively so, sir."

The defendant was also asked by his counsel when on the stand, "Did you, when you signed this affidavit, do it in good faith?" but the plaintiff objected to the question on the ground that the question called for a conclusion and that the defendant must be judged by his acts and not from his conclusions stated on the stand. The objection was sustained. The only direct evidence as to the actual belief of the defendant was thus favorable to the defendant. There was no evidence of his belief which contradicted this direct evidence. In no instance was he shown to have declared or admitted that he did not believe in fact that the plaintiff was insane.

Plaintiff, however, did testify that the day before Thanksgiving, in response to her threat to meet his wife, defendant said, "You had better keep still or I will put you where the bow-wows won't bite you." The conversation was related by her in part as follows: "A. So, I told him I was going over. I said, 'Dolph, I am going over to the train and my car will be up next to yours and I am going to tell your wife the truth. You are lying to one of us. You have kept

this up for three and a half years and I am going to tell her the truth.' Q. What did you mean by that? A. He told me he and his wife were separated. Q. When did he first tell you that? A. When I first met him. Q. How long had he continued telling you the same thing. A. All the time. Q. Go ahead. A. He said, 'Mabel, dear, remember you are in business and have got a good thing here, remember what I am telling you. You had better keep still, or I will put you where the bow-wows won't bark at you.' Q. Tell all you said and what he said. A. I said, 'I didn't give a damn.' Q. Was that all that was said? A. So he said, 'Remember I am warning you.' "

In connection with that conversation she also denied any threats or statements concerning his children, except the following: "Q. Tell what you said and what he said. A. Well, I said I hoped to God somebody would do his daughters the way he did me and that is when he turned wrathy. He got mad. Q. Was that all you said about his family? A. Yes, sir. Q. That was what was said that night? A. Yes, and then he struck me when I said that."

These declarations and threats by the defendant, while tending to show malice against the plaintiff and a purpose on his part to prevent the plaintiff from coming into contact with his wife and children, are insufficient, directly or inferentially, to raise a conflict upon the question of the defendant's actual belief in the insanity of the plaintiff, as distinguished from the belief to be attributed to him as a reasonable man from the facts and circumstances known by him and called to his attention at and before the time he filed the insanity charge. The most that can be said of this evidence is that it shows a private motive for his prosecution, and this alone is not sufficient to overcome the other evidence of probable cause. A want of probable cause cannot be inferred from malice (see cases cited 33 Cent. Dig., Malicious Prosecution, sec. 39; 12 Dec. Dig., sec. 23, p. 1970, Malicious Prosecution, vol. 14; 2d Dec. Dig., sec. 23, p. 1761; *Redgate* v. *Southern Pac. Co.,* 24 Cal. App. 573 [141 Pac. 1191]; *Potter* v. *Seale,* 8 Cal. 217, 220), although malice may be inferred from a want of probable cause (12 Dec. Dig., sec. 32, p. 1982; *Griswold* v. *Griswold,* 143 Cal. 617 [77 Pac. 672]).

I think the judgment should be affirmed.

MYERS, J., Dissenting.—I dissent upon the grounds and for the reasons stated in the dissenting opinion of the Chief Justice herein. In addition thereto I dissent *in toto* from the conclusion of the main opinion herein that "good faith is undoubtedly an element of probable cause in malicious prosecution cases." I do not think that the question of good faith bears any relation to the issue of probable cause. It is in my opinion relevant solely to the issue of malice. To say that the defendant acted *in bad faith* in filing the charge against the plaintiff is but to say that he acted *maliciously* in so doing. When a wrongful act is done from a wrongful motive it is done maliciously in the eyes of the law, and it matters not whether that wrongful motive be an express desire to injure the plaintiff or whether it be a wish to gain an undue advantage to the defendant, or whether it spring from sheer wantonness. In either event it is equally wrongful, and in either event it constitutes malice in fact as the same is known to the law. Malice consists in the evil motive, the "*malus animus,*" which inspired the act. (*Davis v. Hearst,* 160 Cal. 143, 164 [116 Pac. 530]; *Griswold v. Griswold,* 143 Cal. 617, 620 [77 Pac. 672]; *Vesper v. Crane Co.,* 165 Cal. 36, 43 [L. R. A. 1915A, 541, 130 Pac. 876]; *Redgate v. Southern Pac. Co.,* 24 Cal. App. 573, 584 [141 Pac. 1191].) If this be conceded, as I think it must, it seems to me to follow that the conclusion of the main opinion is in conflict with the rule concurred in by substantially all of the American cases and substantially all of the English cases during the past hundred years. There is much confusion and apparent conflict in the decided cases upon malicious prosecution, but there are three points upon which they are substantially all in perfect accord. These are: (1) that to justify recovery of damages for a malicious prosecution there must be a concurrence of two elements, namely, malice and want of probable cause; (2) that the burden is upon the plaintiff to allege and prove the existence of both of these elements; (3) that proof of malice is no evidence whatever of the want of probable cause (or, as it is sometimes stated, that want of probable cause cannot be inferred from malice). These three rules have been regarded as fundamental for more than a hundred years. But if the main opinion herein is to stand it will have the effect, as it seems to me, of utterly destroying the third rule above

stated, and of rendering the first entirely inconsequential. If good faith is an essential element of probable cause, then proof of bad faith is proof of the want of probable cause. But bad faith is nothing else than malice, from which it must follow that proof of malice *is* evidence of the want of probable cause, and suffices to prove both of the essential elements above mentioned, notwithstanding that practically all of the decisions are to the contrary.

I have found no *reasoned* decision rendered within the last hundred years which decides that good faith is an essential element of probable cause. There are statements to that effect in numerous decisions, but those statements will be found, I think, in each case to have been the product of an unreasoned reliance directly or indirectly upon ancient precedents which have been rendered entirely valueless by the important and substantial changes which took place in the law of malicious prosecution during the eighteenth century. Under the ancient common law malicious prosecution was an action on the case in the nature of a conspiracy for falsely and maliciously procuring the plaintiff to be indicted and imprisoned. The want of probable cause was not then an element of plaintiff's cause of action. He was required to allege and prove only that the defendant had maliciously instigated a prosecution against him, that the same had terminated in his favor, and that he was damaged thereby. It was for the defendant to plead as an affirmative defense in the nature of justification that he had probable cause for the prosecution, and the burden of proving the existence of probable cause was upon the defendant. This rule was found to be subversive of the public welfare in that it resulted in criminals going unpunished because responsible citizens would not incur the risk incident to filing complaints against them. The rule was accordingly changed at some time prior to 1797 (*Savil* v. *Roberts,* 1 Salk. 13, 1 Ld. Raym. 374; *Panton* v. *Williams,* 2 Q. B. 169, 1 G. & D. 504, 10 L. J. Ex. 545), so as to require the plaintiff to allege and prove the want of probable cause as an essential element of his cause of action, to which declaration the plaintiff could enter a general plea of not guilty. This change had the effect, of course, of shifting the burden of proof upon the issue of probable cause from the defendant to the plaintiff, and such has been the rule ever since. The occurrence of this fundamental

change in the law is adverted to in *Ball* v. *Rawles, supra* (93 Cal., at p. 229), and in *Panton* v. *Williams, supra* (2 Q. B., at p. 193). It has happened not infrequently that long since that change occurred courts have continued to rely upon the authority of precedents established prior to the change, without realizing that the change in the law had rendered these precedents valueless. This is illustrated by the passage relied upon in the majority opinion herein from *Ball* v. *Rawles, supra,* wherein this court said: "While it is not necessary to show that the crime has in fact been committed, it is necessary to show not only that the defendant had reasonable ground to believe, but that he did in fact believe that the crime had been committed and that the plaintiff had committed the crime." That statement assumes that the burden rests upon the defendant to show probable cause, and it evidently grew out of a consideration of the old English cases prior to 1797. Of course, it is not necessary for the defendant to show anything whatever, unless and until the plaintiff shall have produced *prima facie* evidence of both malice and a want of probable cause, and it is then necessary for the defendant only to rebut the showing made by the plaintiff. Statements are to be found in *Harkrader* v. *Moore,* 44 Cal. 144, *Ball* v. *Rawles, supra, Runo* v. *Williams,* 162 Cal. 444 [122 Pac. 1082], and *Fleischhauer* v. *Fabens,* 8 Cal. App. 30 [96 Pac. 17], each of which does, when considered alone and taken at its face value, give support to the conclusion of the main opinion herein. But each of the decisions in *Harkrader* v. *Moore* and *Ball* v. *Rawles* is in conflict with itself, as is pointed out in the dissenting opinion of the Chief Justice herein. The same thing is true in *Runo* v. *Williams,* and for like reasons. When it is said, in effect, in one paragraph of an opinion that proof of malice is *no evidence* of want of probable cause, and in another paragraph thereof it is said in effect that proof of malice *is proof* of want of probable cause, one of these two statements must be wrong. In *Fleischhauer* v. *Fabens* the district court of appeal merely followed, without questioning it, the rule as stated in *Harkrader* v. *Moore* and *Ball* v. *Rawles.*

The passage in Newell on Malicious Prosecution (sec. 11, p. 325) to the effect that "the law requires that one in instituting a criminal prosecution shall act in good faith or under an honest belief of the guilt of the party arrested;

and this notwithstanding that the party prosecuting has received legal advice and proceeded in acocrdance therewith'' is directed to the question of good faith as an element in the affirmative defense of ''advice of counsel.'' This is apparent not only from the context but from a consideration of the case of *Roy* v. *Goings,* 112 Ill. 656, which is the sole authority cited by the author in support of this passage. The question of good faith as an element of the defense of ''advice of counsel'' has no relevance to the question of bad faith as an essential element of plaintiff's cause of action. Advice of counsel is an affirmative defense by way of confession and avoidance. By pleading it the defendant, in effect, confesses plaintiff's allegation of want of probable cause and seeks to avoid the same by showing that, notwithstanding the absence in fact of probable cause, he was advised by counsel that it did exist and that he acted in reliance upon such advice. Good faith is therefore an essential element of his claim that he relied upon the advice of counsel. It is not in this respect an element of probable cause, but is rather an element of that which the defendant offers as a substitute therefor.

The definition of probable cause given by Newell as the accepted definition thereof, by its very terms, negatives the contention that good faith is an element hereof. It is as follows: ''Reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty.'' (Newell on Malicious Prosecution, sec. 1, at p. 252.) It is true that the author adds thereto the explanation that ''it does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.'' It is apparent from the context that the ''honest and reasonable belief'' there referred to is not a belief in the guilt of the plaintiff, but is rather a belief in the actual existence of the facts and circumstances which go to make up probable cause. Good faith and bad faith are purely subjective and relate solely to a state of mind. It seems to be equally clear that probable cause is wholly objective and must consist in those external facts and circumstances which are known to the defendant or which are believed by him to exist.

The cases of *Potter* v. *Seale*, 8 Cal. 217, *Eastin* v. *Stockton Bank*, 66 Cal. 123 [56 Am. Rep. 77, 4 Pac. 1106], *Fulton* v. *Onesti*, 66 Cal. 575 [6 Pac. 491], *Dawson* v. *Schloss*, 93 Cal. 194 [29 Pac. 31], *Sandell* v. *Sherman*, 107 Cal. 391 [40 Pac. 493], *Booraem* v. *Potter Hotel Co.*, 154 Cal. 99 [97 Pac. 65], *Montz* v. *Nevins*, 40 Cal. App. 202 [180 Pac. 537], *Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578], *Stein* v. *Lacassie*, 189 Cal. 118 [207 Pac. 886], and *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143], do not, as I read them, lend any support to the conclusion of the main opinion upon the point here under consideration. The cases of *Potter* v. *Seale*, *Dawson* v. *Schloss*, and *Stein* v. *Lacassie* seem to me to be in such irreconcilable conflict with the main opinion herein that they must be considered as overruled thereby. In *Potter* v. *Seale*, it was said that ''public policy and public security alike require that prosecutors should be protected by the law from civil liabilities, except in those cases where the two elements of malice in the prosecutor, and want of probable cause for the prosecution, *both concur*.

''Though malice be proved, yet if there was probable cause, the action must fail. Malice may be inferred from want of probable cause, but want of probable cause cannot be inferred from malice, but must be affirmatively shown by the plaintiff. As to the question of *malice*, it is one solely for the jury, and to sustain this averment the charge must be shown to have been *willfully false*.'' (The italics are the court's.) In *Dawson* v. *Schloss* it was held that the following instruction, ''If you find in this case that malice existed upon his [defendant's] part, then the plaintiff would be entitled to recover,'' was clearly erroneous, but that inasmuch as it appeared upon the record to have been given at defendant's request, defendant could not complain thereof upon appeal. In *Stein* v. *Lacassie* the following instruction had been given by the trial court: ''You are instructed that if you find from the evidence in this case that the criminal proceedings against plaintiff were instituted by defendant over a fixed and malicious determination of her own, and not from the advice of counsel, or that she did not communicate a full, fair and true statement of all the facts known to her to the sheriff and the district attorney, and that the district attorney did not advise her there was probable cause for the arrest, then such would constitute lack of probable cause,'' and this

court said: ''It would seem to require no argument to show that this instruction is erroneous, and is prejudically so, since it might well be that the defendant herself might have had abundant cause for insisting upon and procuring plaintiff's arrest upon the charge of having poisoned her horse, even though, in so doing, she was acting upon a fixed and malicious determination of her own and without the advice of counsel; and even though she had not communicated all of the facts known to her to the sheriff and district attorney, or made a full, fair and true statement of the facts to these officials, and even though the district attorney had not advised her that there was probable cause for the plaintiff's arrest.'' If, as is held in the main opinion herein, ''good faith is undoubtedly an element of probable cause in malicious prosecution cases,'' it seems to me to follow inevitably that the instruction last quoted was correct and that the decision in *Stein* v. *Lacassie* is now overruled.

Turning now to the evidence in the instant case, I concede that there is some evidence tending to prove that defendant acted in bad faith in filing the insanity complaint. In other words, there is some evidence of malice. I concede also that there is substantial conflict in the evidence directed to the defense of advice of counsel, and that defense is therefore properly eliminated from further consideration upon this appeal. But I find no evidence whatever tending to prove a want of probable cause. There is an abundance of evidence to prove the existence of probable cause, but that also may be eliminated from our consideration because the burden did not rest upon the defendant to prove the existence of probable cause. It rested upon the plaintiff to prove the absence of probable cause, and even though there were no evidence whatever tending to prove the existence of probable cause, it would still be the duty of the trial court to direct a verdict in favor of the defendant unless the plaintiff produced some substantial evidence tending to prove a want of probable cause. The circumstance that defendant's testimony was contradicted by the plaintiff and, to that extent, impeached, has no tendency whatever to prove a want of probable cause. The fact that a witness lied in 1923 is no evidence that he stole a pig in 1920. By the same token, proof that the defendant testified falsely in 1923 would be no evidence that he acted without probable cause in 1920.

(It is not intended to suggest hereby that the defendant did in fact testify falsely, but merely that the jury might have so inferred from the conflict in the evidence.)

It is not necessary to here review the evidence upon the question of probable cause. The main opinion herein concedes, in effect, that there is no evidence of a want of probable cause except that which tends to prove only that the defendant acted in bad faith; in other words, that which tends solely to prove malice. But proof of malice is no evidence of a want of probable cause unless we are prepared to overrule practically all of the decided cases upon that subject, including our own decisions above referred to, as well as the following: *Grant* v. *Moore,* 29 Cal. 644, 698; *Anderson* v. *Coleman,* 53 Cal. 188; *Jones* v. *Jones,* 71 Cal. 89, 91 [11 Pac. 817]; *Smith* v. *Liverpool Ins. Co.,* 107 Cal. 432, 436 [40 Pac. 540]; *McKenna* v. *Heinlen,* 128 Cal. 97, 102 [60 Pac. 668]; *Lee* v. *Levison,* 173 Cal. 166 [159 Pac. 438]; *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *Redgate* v. *Southern Pac. Co.,* 24 Cal. App. 572, 584 [141 Pac. 1191]; *Jirku* v. *Brod,* 42 Cal. App. 796, 798 [184 Pac. 413].

I am convinced that it was the duty of the trial court to grant the motion for the directed verdict and that the judgment thereon should be affirmed.

Rehearing denied.

In denying a rehearing the court filed the following opinion on January 17, 1924:

THE COURT.—**[6]** In denying a petition for rehearing we wish it to be understood that we are in agreement upon the rule of law involved in a decision of this case, stated in the main opinion as follows: " . . . If there had been no evidence whatever from which the jury might have inferred that the defendant did not in fact believe that the plaintiff was insane, the question of his belief should have been determined by the court on the basis of what, under the circumstances, was sufficient to cause a reasonable man to entertain a suspicion of the insanity of the plaintiff. **[7]** And otherwise, but to the same effect, stated in the dissenting opinion of the Chief Justice as follows: "The rule established by the authorities upon the subject of

belief as an element of probable cause would seem to be this: While the question of probable cause is always a question of law for the court and is to be determined by the standard of the ordinary man, yet if there is affirmative evidence of the *actual belief* of the defendant sufficient to justify a conclusion that he did not in fact suspect the plaintiff of being guilty of the crime with which she was charged, then the question of probable cause to that extent involves a question of fact to be submitted to the jury.''

[8] It may not be amiss to say further that we do not wish to be understood as holding that good faith and an actual and honest belief in the guilt of the party charged with crime is *always* an integral and an independent element of probable cause.

The point upon which we disagree is as to whether there was sufficient affirmative proof, direct or circumstantial, to be submitted to the jury upon the question of whether or not the defendant actually suspected the plaintiff of being insane. Upon that question the members of the court adhere to the respective views stated in the original and dissenting opinions heretofore filed.

Wilbur, C. J., Lawlor, J., Lennon, J., Kerrigan, J., and Seawell, J., concur.

MYERS, J., Dissenting.—I dissent from the order denying a rehearing and adhere to the conclusions expressed in my dissenting opinion, *supra.* Respondent in his petition for rehearing has cited two recent decisions not theretofore cited herein, each of which gives full support to those conclusions. The case of *Director-General of Railroads* v. *Kastenbaum,* decided November 12, 1923, by the supreme court of the United States (263 U. S. 25 [44 Sup. Ct. Rep. 52]), was an action for false imprisonment. In the opinion by Mr. Chief Justice Taft that court said:

''The want of probable cause, certainly in the absence of proof of guilt or conviction of the plaintiff, is measured by the state of the defendant's knowledge, not by his intent. It means the absence of probable cause known to the defendant when he instituted the suit. *But the standard applied to defendant's consciousness is external to it. The question is not whether he thought the facts to constitute probable*

*cause, but whether the court thinks they did."* (Italics added.)

The case of *Barton* v. *Woodward*, 32 Idaho, 375 [5 A. L. R. 1093, 182 Pac. 916], is so strikingly similar to the case at bar both in its facts and in the questions of law presented upon the appeal as to be substantially identical therewith. It was an action for malicious prosecution in the institution of lunacy proceedings against the plaintiff by the defendants. In that case, as in this, there was evidence of malice, evidence that the prosecution was instituted in bad faith, and evidence that the defendants did not actually believe that the charge was true. Thus the question there presented was identical with the one upon which this case must turn, namely, whether or not evidence that the defendant acted in bad faith, or from an improper motive, or without an actual belief in the truth of the charge, can be regarded as evidence tending to prove a want of probable cause. Upon this question that court said:

"It is true there is evidence which would justify a finding of malice, but it is too well established to admit of argument that want of probable cause cannot be inferred from malice. It has been said in some cases that the fact a criminal case is prosecuted from some private or personal motive, other than a public motive, is of itself evidence of want of probable cause. This is not a logical statement. *Probable cause depends upon what the prosecuting witness knew, or ought, as a reasonably prudent man, to have known, when he instituted the proceeding.* If he had no sufficient information to justify a reasonably prudent man in believing the defendant was guilty, then the inference may be drawn he was acting from improper motive. However, improper motive is proof of malice, but not, of itself, proof of want of probable cause. . . . We conclude the evidence is insufficient to establish want of probable cause." (Italics added.)

Waste, J., concurred.