[Civ. No. 8366. Second Appellate District, Division Two.—June 13, 1934.]

MARGARET NAYLOR, Appellant, v. D. L. PETERS, Respondent.

Henry G. Bodkin for Appellant.

Edgar C. Levy, Leon Samuels and Tanner, O'Dell & Taft for Respondent.

ARCHBALD, J., *pro tem.*—From a judgment in favor of defendant entered on the verdict of a jury in his favor upon direction of the court, plaintiff has appealed.

Prior to February, 1929, plaintiff was the owner of an apartment house in Oakland, encumbered by a first trust deed and upon which she herself had placed a second trust deed. The El Merrie Del Corporation (apparently owned or controlled by defendant) owned some lots in Los Angeles County. A deal was made by which plaintiff exchanged her apartment house for certain notes secured by trust deed on an agreed number of said lots. The lots were deeded by defendant to one Noble, who executed the notes and trust deeds. Plaintiff executed a deed to her apartment house in blank and delivered same to one McDonnell, who caused to be inserted therein the name of one Janssen, who in turn with his wife executed a deed to defendant. The taxes, interest, insurance and rents on and from said apartment house were to be prorated as of February 1, 1929, "out of escrow". Plaintiff paid the amounts required of her to settle her share thereof to Mr. McDonnell, through whom the deal was made, plaintiff's son, Nathan A. Naylor, representing her by power of attorney. McDonnell testified that he in turn paid said sums to defendant. Defendant employed plaintiff to manage the apartment house at an agreed salary. The owner of the second trust deed thereon, not receiving his interest, asked plaintiff for it. Finding that defendant was the new owner of the apartment house and that plaintiff had paid her *pro rata* portion of the interest in making the deal, he wrote defendant, requesting payment. Plaintiff sent defendant a check for the rents collected up to March 17, 1929, less expenses and salary, amounting to $684.03. Plaintiff's son met defendant accidentally in Los Angeles about that time and says he asked defendant why he did not "pay our interest and taxes that are due on our first and second trust deeds . . . due to the fact that you have received the money which, according to Mr. McDonnell, has been given you, amounting to some-

thing like $3400.00'', and that defendant replied, ''It is none of your —— business when I pay that interest or when I pay the taxes.'' This conversation was communicated to plaintiff by her son, and on his advice she stopped payment of the rent check ''until this thing was threshed out by our attorney, Mr. Soren Christensen''. The son had another conversation with defendant the latter part of March, in which defendant asked why payment of the check had been stopped by the mother, and at that time defendant was told that it was on the son's instruction. Mr. Naylor testified that defendant then said that ''if my mother did not send that . . . money on to him immediately he would go up and have her arrested'', and that he then told defendant ''that we would continue to hold that money and we would continue to hold other money, collect all the rents, until such time as the thing was settled, and if it was settled we would be only too glad to turn that money over to him upon demand, but upon the advice of our counsel, Mr. Christensen''.

Thereafter plaintiff brought suit in Oakland against defendant, McDonnell, and other parties connected with the exchange, for damages claimed to have resulted from the alleged fraudulent acts of said defendants in obtaining the deed to the apartment house. Such action went to the jury on October 29, 1929, which returned a large verdict in favor of the plaintiff and against McDonnell and another defendant but in favor of defendant Peters. While plaintiff was shaking hands with the jurors who returned the verdict she was arrested on a warrant issued on a complaint sworn to by defendant here charging her with embezzling $111.10, being rent collected in March by her and being a part of the rent covered by the check on which payment was stopped. Plaintiff was found not guilty by the jury before whom she was tried on such charge, and in this action sought damages against defendant for alleged malicious prosecution. At the close of the evidence defendant's motion for a directed verdict on the ground that the evidence showed there was probable cause and that the action was taken on advice of counsel was granted, resulting in the judgment from which this appeal is taken.

▉ It is the contention of appellant that the court erred in taking the case from the jury.

"When the evidence bearing upon the question of probable cause is in conflict in any essential particular it is the province of the jury to determine whether or not facts exist which will warrant or reject an inference of probable cause. . . . Good faith is undoubtedly an element of probable cause in malicious prosecution cases, and an actual and honest belief in the guilt of the plaintiff is obviously an integral part of good faith." (*Franzen* v. *Shenk*, 192 Cal. 572, 578 [221 Pac. 932].) In addition to the evidence heretofore mentioned there is evidence from which the jury might have concluded that defendant, from the beginning of the deal which finally resulted in the exchange, was the party in whom title to plaintiff's property was to be vested and who was to furnish the consideration she was to get on the exchange; that he was to pay the interest and taxes on the notes securing the trust deeds on the apartment house, on one of which plaintiff was personally obligated; that plaintiff paid the *pro rata* of such interest and taxes as well as insurance on the property up to February 1, 1929, to McDonnell, and that the latter turned the money over to defendant; that plaintiff accounted for and paid to defendant the rents collected in February and did not withhold any rent until she stopped payment on the check in March, in an attempt in good faith to compel defendant to pay such interest and taxes, and that plaintiff had no intention of ultimately depriving defendant of any part of such rental collections. To be sure, there is evidence which tends to prove the contrary, but it simply created a conflict the determination of which bears directly upon the good faith of defendant in causing the issuance of the warrant above mentioned. In our opinion, if the jury believed plaintiff's evidence it could have concluded therefrom that defendant did not in good faith cause the issuance of such warrant; and such good faith being a fact necessary to the existence of probable cause, the conflicting evidence should have been left for the jury to weigh and conclude therefrom, under appropriate instructions by the court, whether or not such element was shown, and in consequence whether or not probable cause existed.

█ To make a case of malicious prosecution the evidence must not only establish lack of probable cause, but it must show the existence of malice, which may be inferred by

the jury from want of probable cause or from declarations of the defendant indicating prejudice, ill-will or malicious motive. (*Runo* v. *Williams*, 162 Cal. 444, 450 [122 Pac. 1082].) ██ In addition to the inference of malice which the jurors could have drawn if they believed the evidence tending to show lack of good faith and consequently want of probable cause, there is other evidence which, if believed, tended to show malice. The testimony of Mr. Naylor was to the effect that Peters threatened that if his mother did not pay the money immediately he would have her arrested. Another witness, who was present at the trial of plaintiff's damage suit in Oakland, testified that defendant said, "Well, you people are having your fun now, but I will have my fun later"; that this was a few minutes before Mrs. Naylor was arrested and that she, the witness, was in the courtroom when Mr. Peters "came back with the arresting officer". Plaintiff testified that in July she was requested to come to the office of the district attorney; that she did so with her attorney, Mr. Christensen, and there met a deputy named Westphal; that defendant and his attorneys were also present; that her attorney explained the exchange of property, and that the deputy district attorney refused to file a complaint, saying to defendant that "he could not see any suit there in a charge against me for embezzlement" and that "this is a case for the civil court to decide". Defendant, however, tells an entirely different story of what occurred at the time, but in view of such conflict and the further fact that defendant admits he did not tell his attorney about the conversation with the son of plaintiff, the fact that the jury, if it believed plaintiff's evidence, could conclude that the deputy district attorney who issued the complaint in October was not the same one who plaintiff says refused to do so in July, and that in October, when defendant's attorney "did all the talking" and plaintiff none, a full and fair disclosure of all the facts was not made to the official issuing the complaint, the question of malice should have been left to the jury, as well as the determination of whether or not defendant acted upon legal advice after a full and fair disclosure of all the facts.

Judgment reversed.

Stephens, P. J., and Desmond, J., concurred.